# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ALBERT RICHARDS, individually and in its capacity as Trustee of the KAWISHIWI PARTNERS REVOCABLE TRUST, | ) ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2025-1190-LM |
| CNI HOLDINGS INC., | ) ) | |
| Defendant. | ) ) ) | |

Date Submitted: May 5, 2026
Final Report: August 13, 2026

## POST-TRIAL FINAL REPORT

Johnathan M. Stemerman, ARMSTRONG TEASDALE LLP, Wilmington, DE; *Counsel for Plaintiff Albert Richards.*

Katie Barksdale, James J. English, KENNEDYS CMK LLP, Wilmington, DE; *Counsel for Defendant CNI Holdings Inc.*

**MITCHELL, M.**

## I.   INTRODUCTION

This matter is a books and records action under *8 Del. C.* § 220 ("Section 220"). Plaintiff Albert Richards, individually and in his capacity as Trustee of the Kawishiwi Partners Revocable Trust, is a beneficial stock owner in CNI Holdings, Inc., a Delaware corporation.   Centripetal Networks, LLC f/k/a Centripetal Networks, Inc. is a wholly owned subsidiary of CNI.

Plaintiff seeks books and records to value his CNI stock, however, CNI contends that it has produced what Section 220 requires.  Although Plaintiff initially sought to investigate director disinterestedness and independence, Plaintiff's sole remaining purpose at trial is valuation.  At this stage, the remaining issues are (a) whether Plaintiff is entitled to additional books and records related to his valuation purpose beyond the past three years of annual financial statements and the documents already produced; and (b) whether Plaintiff is entitled to attorneys' fees and expenses.

Accordingly, the Court addresses (i) whether Plaintiff has a proper purpose and satisfied Section 220(b)'s prerequisites; (ii) whether the requested records fall within Section 220(a)(1); (iii) whether any additional records beyond those in Section 220(a)(1) are necessary and essential under Section 220(g); and (iv) the appropriate relief.  For reasons that follow, the Court concludes that Plaintiff has shown entitlement to inspect certain additional books and records necessary and essential

to his valuation purpose and to recover reasonable attorneys' fees related to CNI's failure to produce its bylaws.

This is my Final Report.

## II.   FACTUAL BACKGROUND[1]

### A.   The Parties

Plaintiff Albert Richards ("Plaintiff") is a beneficial stockholder of CNI Holdings, Inc. ("CNI" or "Defendant").[2]   Richards serves as Trustee of the Kawishiwi Partners Revocable Trust (the "Trust").[3]   Centripetal Networks, LLC f/k/a Centripetal Networks, Inc. ("Centripetal")  is a wholly owned subsidiary of CNI.[4]   Centripetal was founded in 2009 by Jonathan Rogers and Steven Rogers (collectively "the Rogers").[5]   Jonathan Rogers is CNI's President and Chief Operating Officer and a member of its board of directors.[6]   In February 2022, Centripetal merged with CNI (the "Merger"), after which Centripetal became a

---

[1]  The facts in this Report reflect my findings based on the record developed at the one-day trial held on May 5, 2026.  I grant the evidence, the weight, and credibility I find it deserves. Citations to the Docket are cited in the form of "D.I. ___."  The parties submitted joint exhibits numbered 1–58.  Citations to the joint exhibits are in the form of "JX ___."

[2]  D.I. 52 at 2.

[3]  D.I. 35 at 1.

[4]  D.I. 52 at 2.

[5]  D.I. 47 at 3.

[6]  D.I. 52 at 2.

3

wholly owned subsidiary and converted to Centripetal Networks, LLC.[7] CNI was formed in connection with that transaction as the holding company.[8]

## B. The California Action

On January 31, 2025, in California state court, Plaintiff filed *Albert Richards v. Centripetal Networks, LLC et al.*, San Francisco Superior Court Case No. CPF-25-518892 ("California Action"), alleging that in 2022, the Rogers engineered a fraudulent, self-interested merger through which Centripetal became a wholly owned subsidiary of CNI.[9] The Complaint asserted direct and derivative claims against the Rogers.[10] On May 23, 2025, Centripetal, CNI, and the Rogers ("California Action Defendants") demurred, asserting that three additional directors, Oliver Daniels, Peter Kelly, and Michael Gulliford ("New Directors"), were appointed to CNI's board of directors as of the date that Plaintiff filed the Complaint.[11]

Because Plaintiff did not plead demand futility as to any of the New Directors, the California court sustained the California Action Defendants' demurrer with leave

---

[7] D.I. 47 at 4.

[8] *Id.* at 2–3.

[9] D.I. 52 at 2–3.

[10] *Id.* at 3.

[11] *Id.*

to amend to address demand futility by November 13, 2025.[12] To assist with preparing for the demand futility issue, on June 20, 2025, Plaintiff served interrogatories and document requests on CNI.[13] On July 22, 2025, the California Action Defendants objected to those discovery requests citing *Jones v. Martinez*, which held that a plaintiff could not use discovery to develop demand-futility allegations and instead should use available "tools at hand," including a books-and-records inspection demand.[14] At that time, Plaintiff had until November 13, 2025, to amend his complaint to plead demand futility as to the New Directors, and CNI was aware of that deadline.[15] On October 21, 2025, the California court granted dismissal on forum non conveniens grounds based on a Delaware forum-selection clause in CNI's certificate of incorporation.[16]

### C. The July Demand

On July 23, 2025, Plaintiff, through his California counsel, served his original demand (the "Initial Demand") for inspection of CNI's books and records.[17] On August 6, 2025, CNI challenged whether that demand complied with Section 220,

---

[12] *Id*.

[13] *Id*. at 3–4.

[14] D.I. 52 at 4;  D.I. 49 at 56.

[15] D.I. 49 at 57.

[16] D.I. 52 at 9.

[17] *Id*. at 4.

asserting the demand lacked evidence of Plaintiff's beneficial CNI stock ownership.[18] Notwithstanding this challenge, on or about August 25, 2025, the parties began informal communications regarding the Initial Demand and CNI's willingness to produce informal books and records.[19] In a September 2, 2025, email, CNI's counsel stated that, "[b]efore the company can consider producing any documents, it will require that Mr. Richards provide the documentary evidence of beneficial ownership of stock, as provided by Delaware law. Once that's received, we can discuss which documents the company may be willing to produce."[20]

On September 3, 2025, Plaintiff provided documentation of his beneficial ownership.[21] On September 5, 2025, Plaintiff's counsel wrote to CNI's counsel that, "[i]t really shouldn't take this long to verify status. Can you please give me an update. If we have to go the formal route, we will. But it would be nice to resolve this without the need to do so."[22] CNI's counsel responded later that day, promising an update "early next week."[23]

---

[18] *Id.*

[19] *Id.*

[20] *Id.* at 4–5.

[21] *Id.* at 5.

[22] *Id.*

[23] *Id.*

## D.    The September Demand

On September 10, 2025, Plaintiff sent a formal demand ("September Demand") pursuant to Section 220, seeking inspection of CNI's books and records pertaining to the New Directors' disinterestedness and independence, as well as other books and records for the purpose of valuing Plaintiff's CNI stock.[24] Specifically, Plaintiff requested the following:

- [CNI's] certificate of incorporation, including a copy of any agreement or other instrument incorporated by reference in the certificate of incorporation.

- [CNI's] bylaws, including a copy of any agreement or other instrument incorporated by reference in the bylaws, in effect at the time (a) of the Merger, and (b) each of the Alleged New Directors became a CNI director.

- Minutes of all stockholder meetings and signed consents evidencing all actions taken by stockholders without a meeting, in each case for the three years preceding July 23, 2025.

- All communications in writing or by electronic transmission to stockholders within the three years preceding the date of this Demand.

- Minutes of any board of directors meeting or any board of directors committee, and records of any board of directors action or any such committee concerning any of the following:
  a. The Merger;
  b. Any potential merger, sale, or similar transaction involving the company;
  c. The election or appointment of any board member;
  d. Any actual or potential conflict of any board member.

---

[24]  *Id*. at 5–6.

- Materials provided to the board of directors or any committee of the board of directors in connection with actions taken by the board of directors or any such committee concerning any of the following:
  a. The Merger;
  b. Any potential merger, sale, or similar transaction involving the company;
  c. The election or appointment of any board member;
  d. Any actual or potential conflict of any board member;
  e. Any agreement entered into under *8 Del.* § 122(18); and
  f. All director and officer independence questionnaires.

- Annual financial statements of [CNI] for the previous three years preceding [the September] Demand; and

- Quarterly financial statements for the time period between the date of [the September] Demand and when such records are produced.[25]

CNI's September 17, 2025, response to the September Demand indicated that CNI was "willing to meet and confer to discuss a reasonable production of certain relevant and non-privileged books and records," but that CNI required "the execution of a mutually agreeable confidentiality agreement that includes an attorneys' eyes only provision."[26] The parties met and conferred on September 19, 2025.[27] CNI agreed to review its records and produce certain documents responsive to the September Demand, subject to execution of a confidentiality agreement,

---

[25] *Id*. at 6–7.

[26] *Id*. at 7; *see generally* D.I. 1.

[27] D.I. 49 at 16.

although the parties did not identify specific documents that CNI would produce.[28] By October 1, 2025, the parties agreed to a mutually acceptable confidentiality agreement ("Confidentiality Agreement") without an attorneys' eyes only provision.[29] Plaintiff executed the Confidentiality Agreement on October 6, 2025.[30] CNI executed the Confidentiality Agreement on October 22, 2025.[31]

On October 30, 2025, CNI produced documents related to the September Demand, including balance sheets and income statements for 2022–2024 and documents related to the appointments of the New Directors.[32] However, CNI asserts it does not maintain quarterly financial statements.[33] Additionally, CNI did not produce its bylaws with the October 30 production.[34] Although CNI subsequently represented on November 14 and again on November 25, 2025, that it would produce the bylaws, it did not do so.[35] On November 26, 2025, Plaintiff filed a plenary action in this Court regarding the New Directors' disinterestedness and

---

[28] *Id*.

[29] D.I. 52 at 8.

[30] *Id*.

[31] *Id*. at 9.

[32] *Id*.

[33] *Id*.

[34] D.I. 49 at 2.

[35] *Id*.

independence.[36]  Thereafter, in this Section 220 action, Plaintiff proceeded solely on valuation.

### E.    The December Demand

On December 15, 2025, Plaintiff served a third demand (the "December Demand") limited to valuation, seeking the following:

- Three years of annual unaudited financial statements.[37]

- Interim financial statements for the twelve months that ended on December 31, 2022, which CNI's management has identified as being the most current financial statements available.

- Projections prepared by CNI's management covering approximately forty-nine months post valuation date.

- CNI's most recent capitalization table(s), including, but not limited to, tables detailing CNI's outstanding shares (of all classes), as well as the number and terms of any outstanding options and warrants.

- All valuations of CNI, Centripetal, or the "Centripetal Group."

- All other books and records containing the same type of information as that provided in the above-listed documents, if not contained in the above-listed

---

[36] *Albert Richards, individually and in his capacity as Trustee of the Kawishiwi Partners Revocable Trust v. Centripetal Networks, LLC f/k/a Centripetal Networks, Inc., et al.*, C.A. No. 2025-1384 PAF;  D.I. 52 at 9–10.

[37] "The December Demand defined the term 'Financial Statements' as meaning a Balance Sheet, Income Statement, Statement of Cash Flows, and a statement of stockholders' equity, inclusive of notes containing disclosures of the accounting standards and practices applied in the statements, as well as any supplementary data deemed necessary to understand the statements." D.I. 52 at 10 n.1.

documents, or those that may be necessary and essential for Plaintiff's valuation purpose.[38]

On January 12, 2026, CNI provided a Summary Cap Table as of December 31, 2025, and a valuation analysis as of December 5, 2022.[39] CNI represents that this is the latest valuation of either CNI or Centripetal and that no later valuations exist.[40] On April 15, 2026, CNI produced cash flow statements for 2022–2024.[41] Additionally, CNI produced annual financial statements for 2022–2024, Delaware Franchise Tax Reports for 2022–2024, its most recent 409A valuation dated December 20, 2022, and a Summary Cap Table as of December 31, 2025.[42] CNI asserts it does not maintain quarterly financial statements.[43]

On April 23, 2026, Plaintiff sent CNI an email with a list of fifteen categories of documents that Plaintiff contended were necessary to complete his valuation of CNI.[44] The April 23 request resulted from Plaintiff's expert, Jaime C. D'Almeida's, April 1 expert report, CNI's April 15 supplemental

---

[38] D.I. 52 at 10–11.

[39] D.I. 49 at 31.

[40] D.I. 47 at 22;  D.I. 52 at 12.

[41] D.I. 52 at 12.

[42] D.I. 47 at 1.

[43] D.I. 52 at 9.

[44] D.I. 47 at 2.

production, and the April 16 deposition of Davis T. Garborg, Defendant's expert.[45] Plaintiff contends that the April 23 request identified additional documents necessary to accomplish the valuation purpose asserted in the December Demand following the parties' expert analysis.[46] CNI maintains that the April 23 email sought additional categories of documents beyond those identified with reasonable particularity in the December Demand and therefore constituted a new demand that could not expand the scope of this action.[47]

## F. Procedural Posture

Plaintiff commenced this action under 8 Del. C. § 220 on October 20, 2025, seeking inspection of CNI's books and records.[48] The December Demand, being served during the pendency of this action, resulted in the January 20, 2026 trial being cancelled, Plaintiff filing an Amended Complaint on January 20, 2026, and CNI filing an Amended Answer on January 28, 2026.[49] The remaining dispute concerns Plaintiff's valuation purpose and his entitlement to additional books and records responsive to the December

---

[45] D.I. 49 at 32, 36;  D.I. 47 at 16.

[46] *See generally* JX 50.

[47] D.I. 47 at 2, 26.

[48] D.I. 1.

[49] D.I. 33;  D.I. 35;  D.I. 36;  D.I. 58 at 4–12.

Demand. Trial was held on May 5, 2026, after which the matter was taken under advisement.[50]

## III. ANALYSIS

### A. Governing Legal Standard

Section 220, as amended by Senate Bill No. 21 ("SB 21"), establishes different requirements depending on the category of books and records sought. Accordingly, the Court first considers whether Plaintiff has satisfied Section 220(b)'s threshold requirements, then determines whether the requested records fall within the categories enumerated in Section 220(a)(1) and finally applies Section 220(g)'s heightened requirements to any requested records falling outside those enumerated categories.

First, to acquire books and records, a plaintiff must plead a proper purpose, which is a purpose reasonably related to a stockholder's interest as a stockholder.[51] This Court has held that valuation is a proper purpose.[52] Section 220(b) additionally requires a written demand under oath that describes with reasonable particularity the stockholder's purpose and demonstrates that the requested records are specifically related to that purpose.[53]

---

[50] D.I. 53.

[51] *8 Del. C.* § 220(a)(2).

[52] *Id.* § 220(b).

[53] *Id*. § 220(b)(2).

13

Under *8 Del. C.* § 220(a)(1)(g), books and records include "[a]nnual financial statements . . . for the 3 years preceding the date of [a] demand."[54]  Thus, where a stockholder satisfies Section 220(b)'s threshold requirements, Section 220 generally permits inspection of the categories of books and records specifically enumerated in Section 220(a)(1).  If the corporation does not maintain a specified record, the Court may order production of its functional equivalent, but only to the extent necessary and essential to accomplish the stockholder's proper purpose.[55]  Without a statutory definition, the phrase "financial statements" should be "construed according to the common and approved usage of the English language."[56]

When a plaintiff requests documents outside the statutory definition of books and records under *8 Del. C.* § 220(a)(1), they must satisfy all three subsections of *8 Del. C.* § 220(g).[57]  First, *8 Del. C.* § 220(g)(1) reaffirms that a plaintiff must provide a proper purpose.[58]  Next, g(2) requires that a "stockholder has made a showing of a compelling need for an inspection of such records to further the stockholder's proper purpose."[59]  Finally, a plaintiff satisfies 8 *Del. C.* § 220(g)(3) by presenting "clear

---

[54]  *Id*. § 220(a)(1)(g).

[55]  *Id*. § 220(f).

[56]  1 *Del. C.* § 303.

[57]  *See generally* 8 *Del. C.* § 220(g).

[58]  *Id*. § 220(g)(1).

[59]  *Id*. § 220(g)(2).

and convincing evidence" that books and records beyond those named in 8 *Del. C.* § 220(a)(1) are "necessary and essential" for valuing stock.[60]  This heightened standard requires more than showing that additional records would be helpful to the valuation; Plaintiff must establish that the particular records sought are necessary and essential to accomplishing that purpose.

This Court has recognized that audited financial statements "for the last three fiscal years (including the current fiscal year)" and federal tax returns "for the last three years" are "essential and sufficient" for minority stockholders to value privately held companies.[61]  Further, "cap tables," "complete tax returns," "information used to support corporate valuations over the past two years," "records supporting [a] valuation," and "a fourth year of audited financials" are "necessary and essential to . . . valuation purposes."[62]  These authorities do not, however, establish a categorical entitlement to every record that could bear on valuation. Consistent with Section 220(g), the Court must determine whether Plaintiff has made the required showing as to each disputed category of non-enumerated records.

---

[60]  *Id*. § 220(g)(3).

[61]  *Thomas & Betts Corp. v. Leviton Mfg. Co., Inc.*, 685 A.2d 702, 714 (Del. Ch. 1995), *aff'd*, 681 A.2d 1026 (Del. 1996).

[62]  *Moran*, 2025 WL 3706330, at *15, *26.

### B. Plaintiff Has Established a Proper Purpose

Before the Court may compel inspection, a stockholder must have a proper purpose reasonably related to the stockholder's interest as a stockholder. Valuing one's stock is a well-established proper purpose under Section 220.[63] Here, Plaintiff seeks to inspect CNI's books and records to determine the value of his minority interest in CNI.[64] Plaintiff is a beneficial stockholder of CNI, a privately held corporation, and the December Demand expressly identifies valuation of his CNI shares as the purpose for the requested inspection.[65] CNI does not dispute that valuation constitutes a proper purpose or that Plaintiff seeks the requested records for that purpose. Plaintiff retained D'Almeida to assess the information necessary to value his CNI interest, and D'Almeida identified deficiencies in the financial and valuation information CNI produced.[66] Those circumstances demonstrate that Plaintiff's valuation purpose is reasonably related to his interests as a CNI stockholder.

Accordingly, the Court finds that Plaintiff has established a proper purpose under Section 220. Whether each category of additional records Plaintiff seeks is

---

[63] *8 Del. C.* § 220(b).

[64] D.I. 49 at 36–39.

[65] *Id*.

[66] *Id*. at 2–3.

necessary and essential to accomplish that purpose is a separate question addressed below.

### C. Scope of Inspection for Valuation

The Court finds, by clear and convincing evidence, that the following additional records are necessary and essential to accomplish Plaintiff's valuation purpose, to the extent they exist and have not been produced. Plaintiff is entitled to additional books and records for his valuation purpose beyond the past three years of CNI's annual financial statements and the additional documents already produced by CNI insofar as those documents are necessary and essential for valuation, because, as explained below, Section 220 permits such requests.

Here, CNI produced "three sets of balance sheets and income statements [and a cash flow statement] . . . for the years 2022, 2023, and 2024."[67] Plaintiff may inspect statements of stockholders' equity for 2022–2024, as these statements are commonly understood to be a subcategory of financial statements.[68] As used here, and consistent with the record and persuasive authority, "financial statements"

---

[67] D.I. 52 at 9.

[68] *See Moran v. Unation, Inc.*, No. 2025-0718-CDW, 2025 WL 3706330, at *19 (Del. Ch. Dec. 22, 2025) (defining financial statements as encompassing "four specific documents: the balance sheet, the income statement, the cash flow statement, and the statement of owners' equity"). *See also* D.I. 52 at 10 n.1 ("The December Demand defined the term 'Financial Statements' as meaning Balance Sheet, Income Statement, Statement of Cash Flows, and *a statement of stockholders' equity . . . .*") (emphasis added); JX 36 at 5; JX 50 at 6.

encompass balance sheets, income statements, cash flow statements, and statements of stockholders' equity. Because statements of stockholders' equity fall within the ordinary meaning of "financial statements," they constitute books and records enumerated under Section 220(a)(1)(g), rather than additional non-enumerated records subject to Section 220(g)'s heightened standard.

Moreover, CNI does not dispute that Plaintiff meets the requirements of Section 220(g)(1). The analysis therefore focuses on Section 220(g)(3). Plaintiff is a minority stockholder valuing a privately held company, and he is entitled to documents beyond these insofar as he has presented "clear and convincing evidence" supporting such entitlement.[69]

Plaintiff has made that showing as to certain additional valuation records. Plaintiff's expert, D'Almeida, opined that the records produced by CNI were insufficient to perform a reliable valuation and identified additional information necessary to understand CNI's financial condition and value. CNI's expert, Garborg, disagreed that those additional records were necessary, but acknowledged that additional information could improve the precision of a valuation. The parties' disagreement therefore concerns not whether the requested information bears on valuation, but whether it is necessary and essential to accomplish that purpose.

---

[69] 8 *Del. C.* § 220(g)(3).

The parties also dispute whether the fifteen categories of documents Plaintiff identified on April 23, 2026 may be deemed necessary to fulfill the valuation purposes in Plaintiff's demand.[70] CNI contends that the April 23 request asserted new categories of documents that Plaintiff had not previously identified with reasonable particularity and therefore cannot expand the scope of this action that are more akin to interrogatories.[71] The December Demand expressly sought, in addition to specified financial and valuation materials, "[a]ll other books and records containing the same type of information" or records "that may be necessary and essential for Plaintiff's valuation purpose."[72]

The Court agrees with CNI. Although the April 23 request may expand upon the valuation purpose and categories of records identified in the December Demand, Plaintiff did not identify these fifteen additional categories until approximately two weeks before trial. Section 220 contemplates a demand process that provides the corporation with an opportunity to evaluate the records sought and determine whether to produce them before the stockholder seeks judicial relief. Permitting Plaintiff to supplement the December Demand with additional categories of records on the eve of trial would circumvent that process and deprive CNI of a meaningful

---

[70] D.I. 47 at 2.

[71] *Id*. at 2, 16.

[72] D.I. 35, Ex. G.

opportunity to consider and respond to those requests before trial. The Court, therefore, declines to treat the April 23 request as a permissible expansion or clarification of the December Demand. To the extent the fifteen April 23 categories seek records not otherwise encompassed by the December Demand, those requests are not properly before the Court in this Action. The Court therefore limits its remaining analysis to the valuation records properly sought in the December Demand.

On this record, Plaintiff has satisfied Section 220(g)(3). Statements of stockholders' equity for 2022–2024 and reasonably current financial information (including 2025 to the extent available) are necessary and essential to value a minority interest as of a date reasonably proximate to the December 2025 demand, rather than solely on historical results through 2024.

Therefore, Plaintiff has satisfied Section 220(g) as to the additional valuation records properly encompassed by the December Demand and identified herein, to the extent they exist and have not already been produced by CNI.

### D.  Plaintiff's Entitlement to Attorneys' Fees

The American Rule stipulates that parties pay their own attorneys' fees, but a bad faith exception exists in Delaware for "glaringly egregious conduct."[73]

---

[73] *See Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 506 (Del. 2005); *SDAS, LLC v. Geneve Holdings, Inc.*, 2025 WL 2083132, at *3 (Del. Ch. July 24, 2025).

Examples of such conduct include false promises to produce books and records, refusal of clearly established rights to inspect books and records, and overly aggressive litigation strategies.[74]

Here, Plaintiff accuses CNI of "requiring proof of beneficial ownership" despite "not challeng[ing] Richards' stockholder status in the California Action"; "requiring an attorneys' eyes only provision" before "agree[ing] to provide documents"; "promising to produce documents but never doing so"; and "failing to execute [a] confidentiality agreement."[75] Plaintiff is awarded reasonable attorneys' fees and expenses limited to CNI's failure to produce bylaws after representing that it would do so. This conduct warrants fee shifting; the other asserted grounds do not. CNI's failure to give Plaintiff its bylaws despite promising twice to do so is bad faith conduct and this Court has held that promising to produce documents and not doing so is bad faith conduct.[76] CNI represented on November 14 and again on November 25, 2025, that it would produce the bylaws, but never did so. The bylaws were expressly identified in the September Demand, and CNI has offered no

---

[74] *See McGowan v. Empress Ent., Inc.*, 791 A.2d 1, 4 (Del. Ch. 2000); *Carlson v. Hallinan*, 925 A.2d 506, 545 (Del. Ch. 2006), *opinion clarified*, 2006 WL 1510759 (Del. Ch. May 22, 2006); *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *30 (Del. Ch. Nov. 24, 2020), *judgment entered*, (Del. Ch. 2020).

[75] D.I. 49 at 61.

[76] JX 30 at 6; JX 35 at 3; *McGowan*, 791 A.2d at 4–5 (holding that falsely promising to produce corporate records that are clearly part of inspection entitlement is bad faith conduct).

explanation for its failure to produce them. Under these circumstances, CNI's repeated assurances followed by its unexplained failure to produce the bylaws warrant fee shifting.

Second, to obtain books and records, proof of beneficial ownership is a statutory requirement if "the stockholder is other than a record holder of stock in a stock corporation . . . ."[77] Thus, CNI's request for this proof does not rise to the level of bad faith conduct because Plaintiff must statutorily provide this proof to CNI.

Third, although production should be "expeditious," Section 220 sets no specific production deadline.[78] On this record, the timing of the confidentiality agreement and production does not constitute bad faith. CNI executed the confidentiality agreement and produced most documents within two months of Plaintiff's September 2 informal request.[79] Thus, CNI's delay in executing the confidentiality agreement and producing documents is not bad faith conduct. On this record, that delay does not constitute the type of "glaringly egregious conduct" necessary to depart from the American Rule.

---

[77] *8 Del. C.* § 220(b)(5).

[78] *Weinstein Enterprises, Inc. v. Orloff*, 870 A.2d 499, 505 (Del. 2005).

[79] D.I. 47 at 31.

Finally, requesting an attorneys' eyes only ("AEO") provision does not constitute bad faith. Section 220(b)(3) allows for "reasonable restrictions on the confidentiality . . . of books and records," and the parties ultimately agreed to a Confidentiality Agreement with the AEO term. On this record, the request does not demonstrate bad faith.[80]

Therefore, attorneys' fees are only granted regarding CNI's withholding of its bylaws, and all other alleged instances of bad faith do not warrant attorneys' fees. Accordingly, Plaintiff is entitled to recover the reasonable attorneys' fees and expenses attributable to CNI's failure to produce its bylaws.

## IV. CONCLUSION

In summary, Plaintiff has established a proper purpose under *8 Del. C.* § 220. As a CNI stockholder, he is entitled to books and records necessary and essential to valuation. Plaintiff has also demonstrated by clear and convincing evidence that the additional records identified above, to the extent they exist and have not already been produced, are necessary and essential to accomplish his valuation purpose and therefore satisfy Section 220(g). Further, due to CNI's bad faith conduct in repeatedly promising but failing to produce its bylaws, Plaintiff is entitled to reasonable attorneys' fees and expenses attributable to obtaining those bylaws.

---

[80] *8 Del. C.* § 220(b)(3).

Accordingly, Plaintiff's demand to inspect additional books and records is **GRANTED**, as set forth above.

This is my Final Report. Any exceptions shall be filed within three days under Court of Chancery Rule 144. If no exceptions are taken, the parties shall submit a stipulated implementing order consistent with this decision one week thereafter.